UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH MICHAEL
CRAGG,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

Case No. 2:14-cv-11379

District Judge Gerald E. Rosen

Magistrate Judge Anthony P. Patti

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10)

**I.   RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 13), **DENY** Plaintiff's motion for summary judgment (DE 10), and

**AFFIRM** the Commissioner's decision.

**II.   REPORT**

      Plaintiff, Kenneth Michael Cragg, brings this action under 42 U.S.C. §§

405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security  ("Commissioner") denying his application for social security disability

insurance benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

10), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 13), and the administrative record (DE 7).

## A.    Background

Plaintiff protectively filed his application for benefits on August 23, 2011, alleging that he has been disabled since May 4, 2010, at age 42.  (R. at 126.) Plaintiff alleges disability as a result of bilateral shoulder dysfunction and arthritis. (Id.)  Plaintiff's application was denied.  Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Tammy A. Thames held a hearing on January 28, 2013 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 72-125.)   On February 4, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Thames' decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

## B.    Plaintiff's Medical History

Plaintiff has a significant history of shoulder problems, injuries, and surgeries.  (*See* R. at 295-96.)  After undergoing a left shoulder arthroscopy with acromioplasty and reporting that his pain improved, he underwent a similar procedure on his right shoulder in 2008.  (R. at 280.)  An October 13, 2009 MRI of revealed moderate osteoarthritis and tendinosis in his left shoulder and mild osteoarthritis in his right.  (R. at 282.)  He underwent physical therapy in 2009,

noting that he was limited by chronic shoulder pain, but able to "continue with his work with modifications and no overhead work." (R. at 285.) His strength was 5/5 bilaterally. (R. at 286.) On March 23, 2010, Plaintiff's left shoulder pain flared up. Tramadol was added to his pain medications, and his strength was assessed as 3/5 on the left, 4/5 on the right, 5/5 grip strength, and 5/5 resisted supination and pronation. (R. at 289.)

Plaintiff underwent two consultative examinations with Ralph B. Blasier, M.D. The first occurred on November 6, 2009, and Dr. Blasier concluded that Plaintiff "should not work above shoulder level." (R. at 299.) The next examination occurred after Plaintiff's alleged onset date, on June 1, 2010. Dr. Blasier again opined that Plaintiff should not do overhead work. (R. at 304.) In addition, he opined that Plaintiff should not do repetitive pushing/pulling/reaching, and no heavy lifting, which he defined as more than twenty pounds occasionally or twelve pounds frequently. (Id.)

In January 2010, Plaintiff saw orthopedist Waheed Akbar, M.D. (R. at 412-13.) Dr. Akbar described Plaintiff as "markedly obese." (R. at 412.) Plaintiff reported to Dr. Akbar that his bilateral shoulder pain was "quite severe" at times, but that his neck did not really bother him. (Id.) Plaintiff also indicated that he had been on Vicodin and other pain medications, which had given him "some limited relief." (Id.) Upon examination, Plaintiff had generalized tenderness and

3

stiffness of the cervical spine, but no gross distal neurovascular deficits.  Plaintiff

underwent two x-rays of his cervical spine and two MRIs of his right and left

shoulders.  Dr. Akbar indicated that the x-rays of Plaintiff's cervical spine revealed

"evidence of mild generalized facet degenerative changes with degenerative disc

disease. . . ."  (Id.)  The shoulder MRIs revealed evidence of some AC joint

arthritis but were "otherwise satisfactory."  (Id.)  On November 18, 2010, Plaintiff

was assessed by surgeon J. Michael Wiater, M.D., as having 5/5 strength in all

directions.  (R. at 396.)

Plaintiff saw physiatrist M. Sohail Jilani, M.D., in 2010-2011.  On October

18, 2010, Dr. Jilani diagnosed Plaintiff with bilateral chronic shoulder pain,

bilateral rotator cuff syndrome with impingement, status post history of bilateral

shoulder surgery, chronic pain, and bilateral carpal tunnel syndrome.  (R. at 384.)

Dr. Jilani started Plaintiff on Darvocet and a TENS unit.[1]  (Id.)  Dr. Jilani

cautioned Plaintiff to avoid repetitive use of his hands, overhead activities, and

limited him to lifting no more than five to ten pounds, but noted that he could lift

twenty pounds occasionally.  (Id.)  Dr. Jilani assessed the same limitations on

November 22, 2010, but noted that Plaintiff's muscle strength was 5/5 except for

---

[1] A Transcutaneous Electrical Nerve Stimulation Unit ("TENS Unit") is a device
that produces an electric current to stimulate the nerves and reduce pain.
*Transcutaneous electrical nerve stimulation (TENS) for chronic pain*, Nat'l
Library of Med., http://www.ncbi.nlm.nih.gov/pubmed/11687055 (last visited
April 30, 2015).

his upper extremities, which were 3/5.  (R. at 380-81.)  According to Dr. Jilani, Plaintiff reported that the TENS unit and Darvocet were helping.  (Id.)  On January 24, 2011, Dr. Jilani indicated that Plaintiff switched to a hospital bed and had been sleeping better.  (R. at 376.)  On February 21, 2011, Dr. Jilani reported that Plaintiff was sleeping "much better."  (R. at 374.)   On August 22, 2011, Plaintiff reported that his symptoms were getting worse, and Dr. Jilani imposed the same restrictions as above.  (R. at 370.)  Soon after, on September 9, 2011, Plaintiff underwent an arthroscopic left shoulder subacromial decompression and acromioplasty with resection of distal clavicle and arthroscopic limited debridement of the posterior glenoid labrum.  (R. at 36.)  He saw Dr. Jilani on October 17, 2011, who indicated that Plaintiff's pain was under control and that he was recovering from his surgery.   On November 28, 2011, Dr. Wiater performed a right shoulder diagnostic arthroscopy, debridement, and repair.  (R. at 391.)

On August 7, 2012, orthopedist Jerome Ciullo, M.D., indicated that Plaintiff could elevate his arms to 70 degrees of lateral abduction and 80 degrees forward flexion, had good sensation laterally, and that his supraspinatus strength against resistance was 4.5/5.  (R. at 425.)  His assessed Plaintiff with bilateral A/C joint arthritis, heterotopic bone status post resection, neck pain, loss of shoulder motion bilaterally in his right shoulder and early glenohumeral arthritis in his right shoulder.  (Id.)   He noted that Plaintiff had bilateral A/C joint reformation after

being resected several times and indicated that the condition was caused by Plaintiff's hypoxia, which was "related to his present weight and sleep apnea." (R. at 429.) Dr. Ciullo opined that weight loss would be the "best way to manage" the condition, rather than "redoing the left shoulder and us[ing] bone wax to prevent it from coming back." (R. at 429-430.)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

At the January 28, 2013 hearing, Plaintiff testified that he was forty-five years old and had completed a year of college. (R. at 93.) He lived with his wife and one of their two sons, aged twenty-three and twenty-one. (R. at 93-94.) Plaintiff described his past relevant work as "water well drilling and geothermal loops," which involved drilling holes into the ground and withdrawing water. (R. at 95.) Plaintiff had employees to help, but testified that he did the physical work until his shoulder pain became too great. (R. at 95-96.) He described the pain as stabbing and worsening with movement. (R. at 96.) Specifically, he indicated that it was unbearable to shovel, carry 50-pound bags, carry and unroll rolls of pipe, and complete activities that required reaching upward with his hands. (R. at 97.) He averred, however, that he "never missed work" because of the discomfort in his shoulders, but did miss because of going to doctor's appointments related to his shoulders. (R. at 97.)

6

Despite having shoulder problems for a number of years, he stopped working in May 2010 when his doctor told him to "find another line of work," (R. at 98) yet continued to work for over five months beyond the alleged onset date. (R. at 192-93.)  When asked about doctor-ordered limitations, Plaintiff testified, "I don't know on that.  I've had a bunch of different doctors tell me a bunch of different things."  (R. at 98.)  More specifically, he testified that he had shoulder surgeries in September 2011, November 2011, September 2012.  (R. at 99.)  Plaintiff averred that he was not taking medication for his shoulder pain because he had adverse reactions to Vicodin and hydrocodone, and the medication did not alleviate his pain.  (R. at 101 and 103.)  Instead, Plaintiff testified that he moves to a different position or tries to lean against something when he is in pain.  (R. at 101.)  For example, during the hearing he leaned forward in his chair to "take the stress off" of his shoulders.  (R. at 107.)  Plaintiff testified that his shoulders hurt all the time and that he received conflicting information about the necessity of an additional shoulder surgery.  (R. at 96 and 110-11.)

Plaintiff also testified to undergoing two carpal tunnel surgeries on November 3, 2011 and May 3, 2011.  (Id.)  He averred that his wrists feel "about the same" since his surgeries.  (R. at 104.)  Specifically, he noted that his entire left hand felt numb, as did his right pinkie and ring fingers.  (R. at 105.)  Plaintiff

further noted that Dr. Ciullo imposed a two-pound weight restriction on his left hand and a five pound restriction on his right hand. (R. at 113.)

Plaintiff testified that he works out for an hour every day by lifting light weights in order to keep his shoulders moving so as not to lose more function. (R. at 102-103 and 109.) He averred that he cooked dinner every night, did dishes, cleaned, did laundry, and vacuumed. (R. at 105, 109, and 112.) He noted, however, that he tended to drop things frequently (including the vacuum cleaner) due to his carpal tunnel. (R. at 112.) Plaintiff averred that he is able to dress himself and wash his own hair. (R. at 114.) Plaintiff testified that he did not drive much because he has trouble staying awake while driving because of sleeping problems, which caused at least one accident. (R. at 106 and 114.) He indicated that he got five and half hours of sleep on a good night and that he napped about an hour every day. (R. at 107.) Plaintiff averred that his sleeping problems were caused by pain. (R. at 108.)

### 2.    Testimony of Plaintiff's Wife, Kimberly Cragg

Plaintiff's wife of twenty-three years, Kimberly Cragg, testified at the hearing. Mrs. Cragg acted as the secretary and treasurer for their family business, and Plaintiff did the physical labor. (R. at 116.) She testified that, when Plaintiff's back pain began, he did less physical labor because they had employees and their sons were involved in the business. (Id.) She testified that Plaintiff's pain had worsened since May 4, 2010, when

8

he stopped working.  (R. at 117.)   Mrs. Cragg averred that they had to close the family

business when Plaintiff stopped working.  (R. at 118.)

        Mrs. Cragg testified that Plaintiff "flips and flops" at night because of his pain.

(Id.)  She stated that Plaintiff naps more than once per day.  (R. at 117.)  She described

Plaintiff as "a worker," who did not like to sit at home and not work.  (R. at 118.)

### 3.    Vocational Expert Testimony

        Donald Hecker testified as the Vocational Expert ("VE") at the January 28,

2013 administrative hearing.  (R. at 119-123.)  The VE classified Plaintiff's past

relevant work as: rotary driller, which was skilled work at the medium exertional

level, but was heavy as performed.  (R. at 120.)  The ALJ then asked the VE a

series of hypothetical questions.  First, he asked the VE to determine if a

hypothetical individual of Plaintiff's age, education, and past work experience

could perform his past relevant work with the following limitations:

> [The hypothetical individual can] occasionally lift and/or carry 10
> pounds, frequently lift and/or carry less than 10 pounds, stand and/or
> walk with normal breaks a total of about six hours in an eight hour
> work day, sit with normal breaks a total of about six hours in an eight
> hour work day.   The ability to perform pushing and/or pulling
> activities with the bilateral upper extremities is limited to an
> occasional basis.  Occasionally perform climbing of ramps or stairs,
> never climbing ladders, ropes or scaffolds, frequently perform
> balancing, stooping, kneeling, crouching, never crawling.   No
> overhead reaching with the bilateral upper extremities.

(R. at 120.)   Based on this hypothetical, the VE testified that the hypothetical

individual could not perform Plaintiff's past relevant work, but could perform jobs,

9

2:14-cv-11379-GER-APP   Doc # 15   Filed 06/30/15   Pg 10 of 28   Pg ID 594

including: surveillance systems monitor, with 750 jobs in the state of Michigan;

packager, with 4,500 jobs in the state of Michigan; and, as an inspector checker,

with 4,500 jobs in the state of Michigan.  (R. at 121.)

The ALJ then asked whether there were jobs in the state or national

economy that could be performed by a hypothetical individual with the following

limitations:

> [The hypothetical individual can] occasionally lift and/or carry 10
> pounds, unable to perform pushing and/or pulling activities with the
> bilateral upper extremities, occasionally perform climbing of ramps or
> stairs, never climbing ladders, ropes, or scaffolds, frequently
> balancing, stooping, kneeling, crouching, never crawling.  Unable to
> perform overhead reaching with the bilateral upper extremities.  The
> ability to perform handling and fingering with the bilateral upper
> extremities is limited to an occasional basis.  Due to pain, frequent
> bouts of insomnia, unable to persist at a work effort for a full eight
> hour work day without frequent unscheduled rest breaks, the need to
> nap at will, and being unable to maintain regular attendants and be
> punctual, that is likely to be absent, or tardy, or leave work early,
> more than three times per month.

(R. at 122.)   The VE testified that such limitations would be work preclusive.  (Id.)

## D.  THE ADMINISTRATIVE DECISION

On March 29, 2013, the ALJ issued her decision.  (R. at 72-82.)  At step one

of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged

in substantially gainful activity since May 4, 2010.  (R. at 74.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin*

At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome; chronic tendinitis of the rotator cuff bilaterally; bilateral rotator cuff syndrome with impingement and chronic shoulder pain; grade one anterolistheis of C3-C4 and mild grade one retrolisthesis of C5-C6; and obesity.  (Id.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 75.)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had the capacity to:

---

v. Barnhart, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

See 20 C.F.R. §404.1520(a)(4); see also Henley v. Astrue, 573 F.3d 263, 264 (6th Cir. 2009); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.

occasionally lift and/or carry 10 pounds and frequently lift and/or
carry less than 10 pounds.  He can stand and/or walk (with normal
breaks) for a total of about 6 hours in an 8-hour workday.  He can sit
(with normal breaks) for a total of about 6 hours in an 8-hour
workday.  He can occasionally push/pull with his bilateral upper
extremities.  He can occasionally climb ramps and stairs.  He can
never climb ladders, ropes, or scaffolds.  He can frequently balance,
stoop, kneel, and crouch.  He should never crawl.  He should not
reach overhead with his bilateral upper extremities.

(R. at 75.)  Relying on the VE's testimony, the ALJ determined that Plaintiff was

unable to perform his past relevant work.  (R. at 81.)

At step five, the ALJ concluded that Plaintiff was capable of performing

other jobs that exist in significant numbers in the national economy.  (R. at 81-82.)

She therefore concluded that Plaintiff was not disabled under the Social Security

Act.  (R. at 82.)

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

---

20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th
Cir. 2002).

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

13

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

In his motion for summary judgment, Plaintiff asserts that the ALJ erred in her assessment of Plaintiff's credibility, and, as a result, her hypothetical to the VE did not accurately portray Plaintiff's impairments.  Plaintiff contends that the ALJ's decision should be reversed and remanded pursuant to Sentence Four of § 405(g).  In the alternative, Plaintiff seeks a remand under Sentence Six of § 405(g) based on the existence of new and material evidence.  The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions.  The Undersigned agrees with the Commissioner's assertion and will address each argument in turn.

14

### 1.    Credibility

Plaintiff asserts that the ALJ failed to articulate his reasons for finding Plaintiff's subjective statements less than credible.  He takes issue with the ALJ's reliance on Plaintiff's hour of daily exercise, his activities of daily living, his testimony that he never missed work because of the pain, and that he was not taking medication to help with the pain, as reasons to discount his credibility.  The Commissioner counters that the ALJ appropriately articulated her reasons for discounting Plaintiff's credibility and substantial evidence supports Plaintiff's RFC.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008).  Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Walters,* 127 F.3d at 531.  When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged."  *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370,

371 (6th Cir. 2011). The ALJ made this finding here, concluding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 76.)

Upon making such a finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the symptoms considering objective medical evidence." 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p. A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medication; 5) treatment, other than medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions. *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, No. 10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed* . . . .") (emphasis in original) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)). In his or her opinion, the ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's

16

statements and the reasons for that weight." *Malcolm v. Comm'r of Soc. Sec.*, No. 13-15188, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1997)).

Here, the ALJ provided a sufficiently specific explanation for her credibility determination, pursuant to the rule. First, it was not in error for the ALJ to consider Plaintiff's testimony that he works out with weights for an hour each day. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (considering Plaintiff's daily exercise as one factor in the credibility assessment). In addition, she was entitled to consider Plaintiff's activities of daily living, including his ability to cook, clean, and do laundry with no physical limitations when assessing his credibility. *See Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (concluding that the ALJ properly considered the claimant's ability to engage in household chores as a reason to discount his credibility as to the disabling symptoms of his pain).

Furthermore, the ALJ did not rely on Plaintiff's activities of daily living alone as her rationale for discounting Plaintiff's credibility. *See Boley v. Comm'r of Soc. Sec.*, No. CIV.A. 11-15707, 2012 WL 7748910, at *13 (E.D. Mich. Nov. 28, 2012) *report and recommendation adopted*, No. 11-CV-15707, 2013 WL 1090531 (E.D. Mich. Mar. 15, 2013) (concluding that, while "minimal activities of daily living do not, by themselves, show that a claimant can perform the demands

of full-time work," such a consideration in combination with other relevant factors was proper to discount Plaintiff's credibility.).  The other relevant factors considered here include objective evidence of Plaintiff's full range of motion, good motor function, 5/5 strength, and daily exercise.  (R. at 77-79).  Additionally, the ALJ appropriately pointed to Dr. Ciullo's notation and advice to Plaintiff that weight loss could help with his shoulder condition, and that Plaintiff had apparently not lost weight.  (R. at 429.)  *See Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (concluding that the claimant's failure to lose weight, in contravention of his physician's recommendation, was "not consistent with [the habits] of a person who suffers from intractable pain," and that "[t]he Social Security Act did not repeal the principle of individual responsibility.").

Plaintiff also takes issue with the ALJ's decision to discount Plaintiff's credibility based on his ability to continue working after his previous shoulder surgeries, but does not explain how the ALJ erred in this respect.  Plaintiff's testimony regarding his ability to work after his shoulder and neck problems began was as follows:

> Q.   All right.   And so, at any time before you actually stopped working, were you missing work because of the discomfort in your shoulders?
>
> A.   No, I never missed work over that, but I missed it over doctors [sic] going to doctor's appointments, trying to figure out what was wrong, yes.
>
> \*           \*           \*

A.  And surgery.  Surger[ies] [and] recover[ies] too.

Q.  All right.  So, you had injuries to your shoulders and neck prior to your stopping work completely in May of 2010, is that correct?

A.  Correct.

(R. at 97.)  Moreover, Plaintiff's testimony indicates that he was not told by his doctor that he was incapable of any work, but rather, "to find *another line* of work" (R. at 98), and he continued to work as a well-digger at least five months beyond the alleged onset date.  (R. at 192-93.)

The ALJ appropriately considered Plaintiff's testimony and work activity report with respect to her credibility determination.  Specifically, she concluded that Plaintiff's ability to continue working, along with "diagnostic studies and physical examination findings," suggested Plaintiff was capable of work activity supported the RFC.  *See, e.g., Cauthen v. Finch*, 426 F.2d 891, 892 (4th Cir. 1970) (finding persuasive the claimant's ability to "work[] regularly for many years affected to virtually the same extent as a present.").  Furthermore, the ALJ found that the claimant's strenuous work after his alleged onset date, while not constituting substantial gainful activity, did suggest that his "abilities were greater than he alleged."  (R. at 79.)  To the extent Plaintiff challenges the ALJ's consideration of this testimony, his argument is unavailing.

Finally, the ALJ expressly stated that she complied with Social Security Rule 96-7p, which requires her to consider a non-exhaustive list of factors in

determining credibility.  (R. at 75.)  There is no indication that she failed to do so.
*See, e.g.*, *Malcolm*, 2015 WL 1439711 at *8 (concluding that, in light of the
Court's deferential approach to credibility assessments, the ALJ's express
statement of compliance was persuasive).  Social Security Rule 96-7p, in
accordance with 20 C.F.R. § 404.1529, *requires* the ALJ to consider the claimant's
activities of daily living.  As addressed above, the ALJ did just that, and included
such consideration in her credibility determination.

The ALJ is also required to consider details about the claimant's pain,
aggravating factors, type and effectiveness of medication, other measures to relieve
pain, and any other relevant factors.  Soc. Sec. Rul. 96-7p.  Here, as further
evidence that the ALJ considered the relevant factors, she summarized Plaintiff's
testimony related to his pain, limited motion, and various surgeries, along with his
trouble sleeping, reaching, and performing over-the shoulder movements.  (R. at
76.)  She also appropriately considered Plaintiff's testimony that he did not take
medication for his pain because of the side effects and ineffectiveness.  (R. at 78
and 101.)  As the ALJ pointed out, this testimony was inconsistent with the
October 17, 2011 treatment note that Plaintiff's pain was "under control in the left
shoulder with the medications."  (R. at 368.)  *See Walters*, 127 F.3d at 531
("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among the medical reports, claimant's testimony, and other evidence.).

Plaintiff does not point to any evidence in the record to persuade the Undersigned that the ALJ failed to comply with Rule 96-7p and 20 C.F.R. § 1529 when making her credibility determination. The ALJ therefore provided a sufficiently specific explanation for her credibility determination and Plaintiff has failed to demonstrate that the adverse-credibility finding was not supported by substantial evidence.

### 2. Substantial Evidence Supports the ALJ's Hypothetical to the VE and Corresponding RFC

Plaintiff asserts that the ALJ failed to properly evaluate his impairments in the hypothetical question to the VE, and therefore her reliance on the VE's testimony was not supported by substantial evidence. Specifically, Plaintiff asserts that, as noted above, if the ALJ had properly assessed Plaintiff's credibility, he would have found a more limited (and work preclusive) RFC. The Commissioner argues that the ALJ's hypothetical question to the VE, and resulting RFC, was supported by substantial evidence.

When an ALJ concludes that a claimant does not have the RFC to perform his or her past relevant work, the burden shifts to the Commissioner to show that Plaintiff "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820

F.2d 777, 779 (6th Cir. 1987). This requires the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citations omitted). Such substantial evidence "may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.* "A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 927 (E.D. Mich. 2005).

Here, Plaintiff contends that the ALJ's second, work-preclusive, hypothetical to the VE accurately reflected his insomnia, inability to work for a full 8-hour workday, need for frequent unscheduled breaks, and the need to nap at will. With respect to Plaintiff's insomnia, Plaintiff asserts that the ALJ "never fully discussed the testimony regarding [Plaintiff's] problems sleeping because of pain," and therefore the Court cannot know whether the ALJ accepted, rejected, or failed to consider this testimony. (DE 10 at 15.) As support for this proposition, Plaintiff points to objective medical evidence in the record demonstrating that Plaintiff underwent carpal tunnel surgeries, reported experiencing numbness in his wrists, hands, and fingers, and had surgery on his right shoulder. (DE 10 at 17.) Plaintiff

contends that this evidence supports his allegations of pain and therefore his inability to sleep at night due to the pain. Defendant counters that the ALJ considered Plaintiff's testimony related to insomnia and fatigue, but did not find that it equated with disability.

Plaintiff's argument is unavailing. As addressed above, the ALJ properly considered Plaintiff's credibility with respect to his subjective complaints of pain. After a lengthy analysis of Plaintiff's testimony and objective medical evidence in the record, the ALJ imposed physical limitations in Plaintiff's RFC, including a lifting/carrying limit of up to ten pounds occasionally, and never reaching overhead with his bilateral upper extremities. (R. at 75.) This is consistent with substantial evidence in the record. For example, on November 18, 2010, Plaintiff's orthopedic surgeon, Dr. Wiater, assessed him as having 5/5 strength in all directions. (R. at 396.) On May 31, 2012, Dr. Wiater again assessed Plaintiff's strength as 5/5 in all directions, without structural changes in either shoulder, and found that he could elevate both arms to 90 degrees. (R. at 403.) In addition, Dr. Jilani consistently noted that Plaintiff should avoid lifting more than five to ten pounds, and should lift more than twenty pounds only occasionally, which is consistent with the RFC. (R. at 369, 371, 373, 375, 377, 379, and 381.) The ALJ also appropriately relied on Plaintiff's testimony that "I'm working out every day," including "lifting light weights" with "two ten-pound weights" on a "block and

23

tackle device" (R. at 102), and significant activities of daily living.  Accordingly, the ALJ's first hypothetical to the VE and the resulting RFC were supported by substantial evidence.

### 3.    Sentence Six Remand

In the alternative, Plaintiff contends he is entitled to a remand under Sentence Six of § 405(g) for consideration of new and material evidence.  He specifically points to a June 2013 EMG of the bilateral upper extremities, a June 2013 CT Arthrogram of the right shoulder, and an August 2013 MRI of the cervical spine.  (R. at 18, 22-23, 54, and DE 10-1.)  The Court can remand for further administrative proceedings "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding."  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-49 (6th Cir. 1996). The Undersigned will consider each requirement in turn.

### a.    New

For the purposes of a remand under Sentence Six, evidence is new "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)(quoting *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990)).  Here, Plaintiff has met his burden that the evidence is new, as it did not exist until after the ALJ's March 29, 2013 decision.

### b.    Material

A claimant satisfies his or her burden of proof as to materiality by demonstrating that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff contends that the evidence is material because it deals directly with the "alleged severe impairments regarding the cervical spine, right shoulder and carpal tunnel syndrome." (De 10 at 19.) Defendant counters that the evidence is not material because it was created after the relevant period of disability. In addition, Defendant points out that the August 2013 MRI was compared to the January 30, 2011 MRI in the record and that the 2013 MRI was noted to be "stable . . . with no new disk protrusion/extrusion (herniated disks) and no significant change in degenerative disk disease at the C3-4 and C6-7 levels." (DE 10-1 at 3.)

Plaintiff fails to meet his burden on this element. As the Commissioner asserts, the findings revealed in the August 2013 MRI are largely cumulative of the previous MRI in the record. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005) (declining to overturn the district court's holding that remand was unnecessary where the evidence was "largely cumulative of evidence and opinions already present on the record."). Furthermore, with respect to the EMG,

although Plaintiff *argues* that the new evidence shows that the ALJ should have imposed manipulative limitations because the EMG confirms "continued median neuropathy of the bilateral extremities, he does not point to any *evidence* connecting such a finding with the requirement for manipulative limitations. *See Guy v. Comm'r of Soc. Sec.*, No. 11-12828, 2013 WL 1148413, at *5 (E.D. Mich. Feb. 19, 2013) *report and recommendation adopted*, No. 11-CV-12828, 2013 WL 1148412 (E.D. Mich. Mar. 19, 2013) (noting that "disability determinations turn on . . . the functional limitations caused by Plaintiff's impairment.").

Finally, the time period covered by the additional testing occurred after the ALJ's March 29, 2013 decision was issued, and therefore was not representative of the relevant time period. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.").

### c.      Good Cause

Plaintiff also fails to show good cause for a Sentence Six remand.  He argues that "good cause for failure to incorporate this evidence into the record prior to the ALJ's denial of March 2013 is because the evidence did not exist."  (DE 10 at 19.) The Sixth Circuit, however, "has taken a harder line on the good cause test," requiring a claimant to "give a valid reason for his [or her] *failure to obtain* evidence prior to the hearing." *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d

964, 966 (6th Cir. 1986) (emphasis added); *see also Foster*, 279 F.3d at 357 ("A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."). Here, Plaintiff provides no reason for failure to obtain such evidence prior to the hearing. Accordingly, I do not recommend a remand under Sentence Six of §405(g).

### G. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 30, 2015                    s/Anthony P. Patti
                                        ANTHONY P. PATTI
                                        UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on June 30, 2015, electronically and/or by U.S. Mail.

                                        s/ Michael Williams
                                        Case Manager for the
                                        Honorable Anthony P. Patti